# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**RAMSAY CLARK,**

      **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 2:18-cv-00109-KS-MTP**

**LARD OIL COMPANY, INC.**
**and ACM TRANSPORTATION, LLC**
**and JOHN DOES 1-10,**

      **DEFENDANTS.**

_____ /

## MEMORANDUM OPINION AND ORDER

This cause comes before the Court on the Motion to Exclude Expert Opinions of Defendant's CPA, C. Mark Bullock [94] filed by Plaintiff, Ramsay Clark, wherein Plaintiff argues that Bullock's opinions should be excluded pursuant to Federal Rule of Evidence 702 and the standard for the admissibility of expert testimony articulated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Defendants have responded [106], and Plaintiff filed a reply [113]. Having reviewed the parties' submissions, the relevant legal authority, Mr. Bullock's opinion letter dated April 30, 2019, and otherwise being fully advised in the premises, the Court finds the motion is well taken and will be granted.

## I. BACKGROUND

This action arises out of a June 6, 2016 automobile accident involving a tanker truck driven by an employee of ACM Transportation who caused a four-car pileup on Old Highway 11 in Hattiesburg, Mississippi. Plaintiff allegedly sustained multiple injuries in the accident. There has been an admission of liability and thus, the only issue is damages. In support of his damages

claim, Plaintiff retained Bill Brister, Ph.D., an economist to opine about Plaintiff lost earnings resulting from injuries Plaintiff allegedly suffered. He submitted a report on October 4, 2017 [90-2] and another on February 28, 2019 [90-1].[1] In opposition, Defendants hired C. Mark Bullock ("Bullock"), a CPA, to rebut the opinions of Bill Brister.

On April 30, 2019 Bullock wrote a letter, consisting of just over three pages, to Defendants' counsel, Edward C. Taylor [94-4].[2] In the letter, Bullock states that he has been retained "to offer opinions regarding Plaintiff Ramsay Clark's claim for loss of future earnings in the above-referenced matter." Bullock states in the letter that he reviewed the two reports of Brister; Plaintiff's 2017 federal income tax return; Plaintiff's deposition transcript; W-2's for 2010-2017 and miscellaneous payroll records from Plaintiff's employer. [94-4]. Within the letter he appears to state a number of different opinions. The first is contained in the first paragraph: "As will be discussed below, in my opinion, there is no credible basis that Mr. Clark has had any significant loss of future earnings as a result of the subject automobile accident." [94-4] at p.1.

Bullock then states that after reviewing Brister's two reports and comparing the conclusions reached in each report, he identified six issues that he believes raise "significant doubts as to the reliability of the alleged lost earnings claim of Ramsay Clark." [94-4] at p.1. These six issue statements could be construed as opinions or it could simply be the information Bullock considered to form the bases of his opinions. These six issues are as follows:

---

[1] There have been numerous motions seeking to strike the opinions of the experts in this matter; thus, reports are in the record from the various motions and cited to as needed by the Court in its analyses. Also, it is noted that this Court entered an Order [130] striking Plaintiff's supplemental designation wherein Plaintiff contended that he may rely on either report or both reports, thereby precluding any use by Plaintiff of the October 4, 2019 report.

First, after noting that the claim decreased with the second report, Bullock opines that Brister changed his theory because there was no documented loss of earnings in 2018.

Next, Bullock notes that the decrease in the losses indicates that "assumptions can be easily manipulated to alter or achieve the desired result."

Third, he claims that Plaintiff's deposition revealed many significant events other than the accident that affected Plaintiff's compensation. Bullock recites the deposition snippets in his letter.

Fourth, he states that, "The earnings of Mr. Clark reflect a successful career path." While not clearly stated, it appears he recites figures either from Plaintiff's W2s or payroll records, perhaps both.

Fifth, Bullock recites Brister's assumptions in his first report and states that Brister's estimate first assumed "that [Plaintiff] suffered a significant reduction in earning capacity as the result of injuries incurred on June 6, 2016," and the second assumption was that "this reduction in earning capacity will continue throughout the remainder of his work life expectancy." Bullock then states that this first report provides proof only that Plaintiff's loss of earnings is temporary in nature lasting no more than one year—June 2016 to June 2017 and that Table 1 Earnings Schedule proves that assertion.[3] Bullock also states that Plaintiff's deposition testimony supports many causes for the 10% drop in earnings in the year following his injury.

Sixth and finally, Bullock asserts that the business reasons for hiring a helper to be paid 15% of Plaintiff's omissions is not proven in Brister's report and that the arrangement appears to be short term in duration and has to date lasted no more than a few months.

Other opinions appear to be contained in the "Summary of Conclusions," which state:

A. Dr. Bill Brister's reduction in alleged loss of earnings from $958,772 down to $664,981 (30.64%) proves his various theories and assumptions are not based upon facts but instead are based upon statistical analysis easily manipulated to achieve the desired result.

B. The Reasons [Plaintiff's] income escalated were quoted directly from his deposition and included moving from inside or counter sales to outside sales where he was compensated by a 2% commission on sales. His compensation jumped from approximately $50,000 in 2011 to approximately $110,000 in 2012

---

[2] This letter is presumably his expert report per Federal Rule of Civil Procedure 26(a)(2)(A).
[3] There is no Table 1 Earnings Schedule in the record for the Court to review.

> or 120%. Then [Plaintiff's] income jumped once again when his compensation was changed for 2015 to a commission based upon sales profits. His compensation rose to $193,140 in 2015 and capped at $219,632 in 2016. During 2017, [Plaintiff] lost his two biggest accounts . . . .After losing the two accounts, [Plaintiff's] compensation dropped to $201,539 in 2017, his one year of short-term lost earnings. Once again, [Plaintiff] picked up new customers and once again his compensation "moved due to market fluctuations and then gathering customers."

*See* [94-4]. Bullock concludes his letter by stating, "Based on all of the aforementioned, it is my opinion that from an accounting or economic standpoint, there is no credible evidence to support a claim that [Plaintiff] has suffered a significant loss of future earnings as a result of the subject automobile accident." Plaintiff now seeks to exclude Bullock's testimony and opinions.

## II. DISCUSSION

### A. Legal Standard for Expert Witness Testimony

Federal Rule of Evidence 702 gives the district court considerable discretion to admit or exclude expert testimony. *See General Electric Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (explaining that the admission or exclusion of expert witness testimony is a matter that is left to the discretion of the district court); *Nano-Proprietary, Inc. v. Canon, Inc.*, 537 F.3d 394, 399 (5th Cir. 2008). Rule 702 provides that a witness who is "qualified . . . by knowledge, skill, experience, training or education," may testify when scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. For the testimony to be admissible, Rule 702 requires that (1) the testimony be based on sufficient facts or data, (2) the testimony be the product of reliable principles and methods, and (3) the witness apply the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993). *See also Kumho Tire,* 526 U.S. at 137 (clarifying that *Daubert*'s gatekeeping function applies to all forms of expert testimony). The Court's gatekeeping function thus involves a two-part inquiry into reliability and relevance. First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir.1998). The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 589. Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence, in other words, whether it is relevant. *See id*. at 591. The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment. *See Daubert,* 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").

**B. Analysis**

Plaintiff states that Bullock has not been voir dired or testified in this case yet. [94] at p. 1. Thus, the only opinions, bases, and methodology that can be addressed are those contained in Bullock's April 30, 2019 letter. Plaintiff argues that Bullock's opinions, particularly the critiques of Brister's report, are not based on any accounting principles and do not require any scientific or

technical expertise—they are simply a layman's criticism. [95] at 67. Plaintiff also argues that Bullock has applied no discernable methodology to arrive at any of his opinions. [95] at 8-9.

### 1. Common Experience and Knowledge

First, as to Plaintiff's argument that Bullock fails to offer any "expert" opinions, the Court has to agree with Plaintiff. The Court is unable to discern how any of the statements, opinions, observations, or conclusions reached in Bullock's letter report require any specialized knowledge, skill, experience, training or education. Bullock points out six issues in the evidence he reviewed and claims that it that undermines the reliability of the lost earnings claim, but nothing in those six issues have any basis in accounting or would assist in a specialized way the jury's understanding of that same evidence. Bullock's observations of the evidence and his conclusions drawn from that evidence are nothing more than a jury itself is capable of reading, interpreting, and assessing. For instance, as to Bullock's fourth bullet point and Summary Conclusion "B," it takes no particularized knowledge to view payroll records and see that Plaintiff's income appears to increase over the course of his career with his employer. Defendants argue themselves that the facts relevant to determining this motion are that "Plaintiff is a high wage earner, his earnings have continued to grow, and he asked his employer for an assistant so he could improve his business." [106] at p. 2. As in the case of *Peters,* discussed below, those are facts that a jury does not need assistance in understanding.

In *Peters v. Five Star Marine Service*, the Fifth Circuit affirmed the district court's exclusion of the expert testimony of a maritime safety expert who proffered testimony regarding whether it was reasonable for an employer to instruct his employee to manually move equipment on the deck of a boat during heavy seas, whether cargo was properly stowed, and whether diesel

fuel would make the deck slippery. 898 F.2d 448, 449 (5th Cir. 1990).[4] The *Peters* court found that the jury could analyze the situation by using only their common experience and knowledge. *See id*. 449-450. Again, just as in *Peters*, this Court finds that Bullock's criticisms of Brister's report and his analysis of the evidence are issues that can be explored on cross-examination of Brister and that are well within the purview of the jury's common experience and knowledge.

### 2. No Discernable Methodology

Next, as to Plaintiff's argument that Bullock has not employed any methodology to the facts of this case, the Court again agrees. Even under the facts that Bullock contends are the true facts, he fails to apply any specialized knowledge to those facts. Although Bullock is a CPA, the Court is unable to discern any sort of methodology or accounting principles that Bullock used to reach his opinions. Defendants claim that Bullock's opinion is that Brister's report "cannot be relied on because it is based on two different methodologies that are not consistent," [106] at p. 2, but that is not what his report says. Bullock does not discuss Brister's methodology at all—he only takes issue with the fact that the total loss numbers are different. [9-4] at pp. 1-2.

Also, Defendants argue that this Court, "when evaluating the methods, analysis, and principles utilized by Mr. Bullock, will find that he used his accounting specialty to analyze the numbers and review other evidence available to him to come to his conclusions regarding Plaintiff's loss of earnings. [106] at pp. 2-3. However, the Court has simply not been presented with any evidence of Bullock's methodology, much less the reliability of it.

The proponent of expert testimony has the burden of showing that the testimony is reliable. *See United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). The Court must agree

---

[4] Although the case is pre-*Daubert*, an expert has always been subject to the requirements of Rule 702 such that the expert's specialized skill or knowledge must assist the trier of fact.

7

with Plaintiff that Defendants have not met their burden to show that Bullock employed a reliable methodology. In his Reply, Plaintiff recites the *Daubert* factors to argue that Bullock's opinions fail as to every factor. [113] at p. 5. However, the Court is not certain that the *Daubert* factors are the best means of assessing whether Bullock actually applied accounting principles in any analysis. *See Kumho Tire*, 526 U.S. at 150–51 (recognizing that the "factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony"). However, Defendants must provide some evidence of reliability of the method employed by their expert. Here, the report does not indicate whether Bullock applied any accounting principles or specialized knowledge to the information provided him, much less how he applied such.

## III. CONCLUSION

Based on the foregoing analysis, it is hereby ORDERED that Plaintiff's Motion to Exclude Expert Opinions of Defendant's CPA, C. Mark Bullock [94] is hereby granted. C. Mark Bullock is precluded from testifying in this matter. Additionally, neither his April 30, 2019 letter nor the opinions expressed therein, shall in any way be admitted into evidence in the trial of this matter.

DONE AND ORDERED this 12th day of September 2019.

/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE